## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES

v.

JOSEPH KONRAD

**FILED**

APR 19 2011

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

CRIMINAL ACTION

NO. 11-15

## MEMORANDUM RE REDACTION OF INFORMATION IN CRIMINAL CASE

**Baylson, J.**                                                              April  /9 , 2011

The issue presented is whether a defendant named in a Criminal Information can secure

redaction of facts he asserts are not necessary and will cause him great embarrassment.

### I.    Background

On January 6, 2011, the Government filed an Information charging Defendant with one

count of knowingly and willingly making "materially false, fictitious, and fraudulent statements

and representations" to the Federal Aviation Administration ("FAA") in violation of 18 U.S.C. §

1001. ECF No. 1, at 1-2. The Information alleged that, on three occasions between October

2007 and November 2009, Defendant represented "on FAA Form 8500-8, titled Medical

Certificate Second Class and Student Pilot Certificate, that he had not visited a health

professional within the previous 3 years and that he had not been diagnosed with a mental

disorder or substance dependence or substance abuse[.]" Id. at 1. The Information alleged

Defendant's statement to be false as Defendant "knew, on or about July 24, 2007, [he] was

examined by a medical doctor and diagnosed by that medical doctor with opioid abuse and

bipolar disorder." Id. (emphasis added).

-1-

## A.  Defendant's Motion

On January 28, 2011, Defendant filed a Sealed Motion to Redact Information pursuant to Fed. R. Crim. P. 49.1 (ECF No. 6).  Defendant asked the Court to order "the details of [Defendant's] prior mental health and substance abuse dependance diagnoses" be redacted from the Information.  Def.'s Mot. at 4.  Defendant argued that disclosure of his medical diagnoses was "not necessary to state the charge against him," but will subject him to unfair prejudice.  Id. at 2.  Defendant contended that exposure of his "sensitive mental health and substance dependence history to the public" would subject him to humiliation and that the reference in the Information to his "opioid addiction" will lead the public to mistakenly believe that Defendant is a heroin addict, which he is not.  Id. at 1 n.1; 2.  As the Government refused Defendant's request to omit the details about "specific, confidential medical diagnoses" from the Information, Defendant argued that protection of his privacy and reputation provided good cause for the Court to order the Government to do so.  Id. at 2-3.

At the time Defendant filed his motion, he had not, yet, pleaded to the charge in question. Thus, the Court credited Defendant's claim of unfair prejudice and granted the motion, without waiting for the Government's response.  The Court entered a sealed order to that effect on January 28, 2011 (ECF No. 7)

## B.  The Government's Response

On February 2, 2011, the Government filed a Response to Defendant's Motion to Redact Information as a Motion for Reconsideration and requested that the Court now deny Defendant's Motion (ECF No. 9).  Defendant submitted a reply on February 3, 2011.

## C. The Guilty Plea Hearing

On February 22, 2011, Defendant entered a guilty plea in open court. At the hearing, Defendant agreed to waive prosecution by indictment and consented to allow prosecution to proceed by way of the above-mentioned Information (ECF No. 12). The Government then referred in open court to a Guilty Plea Memorandum, which included the Government's Factual Basis for Plea and details of Defendant's medical history contained within the Information (ECF No. 13).

The Guilty Plea Memorandum stated that Defendant, a registered nurse, had obtained his private pilot license on August 10, 2002, and his commercial pilot license on October 31, 2007. ECF No. at 2. The Memorandum further stated that Defendant's private pilot license required Defendant to hold a medical certificate, which the FAA required Defendant renew every two years by submitting FAA Form 8500-8. Id. Defendant's commercial license required Defendant to obtain the certificate annually. Id. To obtain the certificate, it was necessary that Defendant meet the requirements of "no established medical history or clinical diagnosis of, among other things, bipolar disorder or substance dependance, including opioid dependence, and no substance abuse within the preceding 2 years." Id. at 3.

The Memorandum recounted proceedings conducted by the Pennsylvania Board of Nursing ("Board of Nursing") during which the Board of Nursing ordered Defendant to submit to a medical and physical examination by George Woody, M.D. Id. The July 24, 2007 examination resulted in a diagnosis of opioid abuse and bipolar II disorder and "put [Defendant's] nursing license on probation subject to certain conditions." Id. The Board ultimately suspended Defendant's license for 3 years as of March 24, 2009. Id. at 3, n.1.

-3-

The Memorandum stated that Defendant had "failed to disclose his mental health and substance abuse issues to the FAA and, in fact, falsely represented that he did not have such issues." Id. The Memorandum went on to state that by submitting FAA Form 8500-8 to the FAA on October 17, 2007; October 30, 2008; and November 12, 2009, Defendant "falsely answered 'No' to questions 18m (regarding whether [Defendant] had ever been diagnosed with or had any mental disorders of any sort) and 18n (regarding whether he had ever been diagnosed with or had any substance dependance or substance abuse or any use of illegal substance within the previous 2 years)." Id. at 3-4. In addition, Defendant "falsely answered 'No' to question 19 (regarding visits to health professionals within the last 3 years) and failed to list his examination by Dr. Woody." Id. at 4.

Defendant did not make any effort to prevent this information from being read into the record or to request that the transcript of the hearing be sealed.

Before the close of the hearing, the Court heard argument on the Government's pending Motion for Reconsideration and requested the Government consider amending the Information. In a March 1, 2011 letter submitted to the Court, the Government declined to amend the Information.

Now that Defendant has pleaded guilty to the charge contained in the Information, the Court grants the Government's Motion for Reconsideration and concludes, in retrospect, that the Court erred in granting Defendant's Motion.

## II.   Parties' Contentions

### A.   The Government's Contentions

In its Motion for Reconsideration,[1] the Government contends that Defendant's argument "would be more appropriately styled as a motion to strike surplusage," pursuant to Fed. R. Crim. P. 7(d). Def.'s Mot. at 8. The Government then argues that the Court's discretion to grant such a motion is severely limited and not appropriate here, since the details Defendant seeks to be redacted are relevant to the charge. Id.

The Government argues generally that Defendant may not rely on Rule 49.1(a), as the privacy protections provided by that Rule does not cover the information Defendant seeks to redact, nor the charging document in which the details are contained. Id. at 6.

As to the applicability of Rule 49.1(c), the Government contends that the information that Defendant seeks to redact is already a matter of public record, as a result of the Pennsylvania administrative process that led to the suspension of Defendant's nursing license. Thus, the Defendant cannot argue that the information is either "private" or "confidential." Id. at 7. Finally, the Government argues that the nature of Defendant's false representation to the FAA created a "public safety issue that should not be further hidden from view[.]" Id. at 10.

### B.   Defendant's Response

Defendant responds that the diagnoses are "clearly relevant" to the charge, but "do not need to be stated for the charging document to accurately apprise [Defendant] and the public of

---

[1]This Court will not restrict the Government's Motion to the narrow circumstances normally accompanying motions for reconsideration because the Government did not have the chance to oppose Defendant's Motion in the first instance. See Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

the nature of the charge[.]" Def.'s Resp. at 1. Defendant responds, as well, that, while the details of Defendant's diagnoses are a matter of public record, they are available only by request and in person or from a "relatively obscure" website. Id. at 2. According to Defendant, accessability to both sources "pal[es] in comparison to the public's easy access to PACER and the federal court's Criminal Clerk's Office." Id. Finally, Defendant argues that the Government has not demonstrated a public interest in disseminating these details, particularly given the cooperation Defendant has shown federal authorities regarding the charge against him. Id. at 3.

## III.  Discussion

### A.  Federal Rule of Criminal Procedure 7(d)

Rule 7 governs "[t]he Indictment and the Information." In "contrast to an indictment," an "information . . . is not preceded by a grand jury proceeding." United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1155 (3d Cir. 1991) (citing Fed. R. Crim. P. 7). Rule 7(b) allows the government to prosecute by information if "the defendant -- in open court and after being advised of the nature of the charge and of the defendant's rights -- waives prosecution by indictment." Whether proceeding by way of indictment or information, the government's charging document must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Pursuant to Rule 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."

Rule 7(d) provides defendants with protection "against immaterial or irrelevant allegations in an indictment or information, which may . . . be prejudicial." United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006) (quoting Fed. R. Crim. P. 7(d), Advisory

-6-

Committee's Note). The Third Circuit Court of Appeals has interpreted Rule 7(d) to allow information to be stricken as surplusage only if that information is both "irrelevant (or immaterial) and prejudicial." Id. (emphasis added). If the information sought to be stricken is prejudicial, but relevant, the Third Circuit has held that the information "must be included for any future conviction to stand." Id. Due to this "exacting standard," Rule 7(d) motions are "rarely granted." United States v. Aguilar, 256 F. Supp. 2d 306, 317 (D.N.J. 2003) (Orlofsky, J.) (citing United States v. Giampa, 904 F. Supp. 235, 271 (D.N.J. 1995)). As an initial matter, this Court must decide whether or not Rule 7(d) entitles Defendant to request that the details of his medical diagnoses be stricken from the Information.

Defendant argues in his Motion that "the specific details of [his] diagnoses are not necessary to state the charge against him." Def.'s Mot. at 2. However, in his Answer to Government's Request for Reconsideration, Defendant acknowledges that he would be "admitting, at the guilty plea hearing, that he knew he had [the] diagnoses when he completed the forms" and that he supplied false answers on the FAA form. Def.'s Resp. at 1. Without addressing the applicability of relief under Rule 7(d), Defendant concedes, "[t]he diagnoses are clearly relevant." Id.

The details contained within the Information are relevant to the charge. 18 U.S.C. § 1001 provides, in relevant part, "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . (2) makes any materially false, fictitious, or fraudulent statement or representation . . . ; shall be fined under this title, imprisoned not more than 5 years[.]" For a statement to be material, for the purposes of Section 1001, that statement "must have a natural tendency to influence, or [be]

-7-

capable of influencing, the decisionmaking body to which it is addressed." United States v. McBane, 433 F.3d 344, 350 (3d Cir. 2005) (holding that the Government need not prove a defendant influenced an "actual, particular" agency decision to establish materiality) (quoting United States v. Gaudin, 515 U.S. 506, 512 (1995)).

The Information alleges Defendant made representations to the FAA, a federal regulatory agency, on FAA Form 8500-8 that he had neither "visited a health professional within the previous 3 years" nor been "diagnosed with a mental disorder or substance dependence or substance abuse." ECF No. 1, at 1; see also Plaintiff's Medical Certificate Second Class and Student Pilot Certificates, Def.'s Exs. E, F, G. The FAA uses Form 8500-8 "to determine whether [an applicant] meet[s] Federal Aviation Administration medical requirements to hold an airman medical certificate or airman medical and student pilot certificate." United States v. Culliton, 328 F.3d 1074, 1077 (9th Cir. 2003) (quoting Form 8500-8, Privacy Act Statement). The allegations that Defendant "was examined by a medical doctor and diagnosed by that medical doctor with opioid abuse and bipolar disorder" go directly towards the nature of Defendant's falsifications to the FAA and their materiality. This Court concludes that Rule 7(d) does not provide Defendant with a basis upon which to request that the details of his diagnoses be stricken from the Information because those details are relevant to the charge against him.

## B. Federal Rule of Criminal Procedure 49.1(e)

With the passage of section 205(c)(3) of the E-Government Act of 2002, Public Law No. 107-347, Congress directed the Supreme Court "to prescribe rules 'to protect privacy and security concerns relating to electronic filing of documents and the public availability . . . of documents filed electronically.'" Fed. R. Crim. P. 49.1, Advisory Committee Notes. Pursuant to

-8-

this directive, Rule 49.1 and its analogues in the Federal Civil and Bankruptcy Rules[2] now provide "privacy protection for filings made with the court." Fed. R. Crim. P. 49.1. While Rule 7(d) may not provide Defendant with the relief he seeks, this Court must still evaluate whether redaction is appropriate under the discretionary authority provided to the Court by Rule 49.1(e).[3]

Rule 49.1(e), "Protective Orders," permits a court, for good cause, to "(1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court." Fed. R. Crim. P. 49.1(e). Pursuant to Rule 49.1, a party may request that the Court "order in a particular case more extensive redaction than otherwise required by the Rule, where necessary to protect against disclosure to nonparties of sensitive or private information." Fed. R. Crim. P. 49.1(e), Advisory Committee Notes. While the Rule provides a court with discretion to "order . . . more extensive redaction," this does not "affect the limitations on sealing that are otherwise applicable to the court." Id. Therefore, this Court must examine the scope of its discretionary authority and Defendant's interests in maintaining privacy in light of the common law right of public access in criminal cases. See United States v. Wecht, 484 F.3d 194, 208 (3d Cir. 2007) (citing Goldstein v. Forbes (In re Cendant Corp.), 260 F.3d 183, 192 (3d Cir. 2001)).

## C. Common Law Right of Public Access

_____

[2]See Fed. R. Civ. P. 5.2; Fed. R. Bankr. P. 9037.

[3]Rule 49.1(a) governs redacted filings and establishes a presumption that parties should redact certain personal identifiers, such as any social security numbers and birth dates, from documents filed with the court electronically. Rule 49.1(b) lists certain documents, including charging documents, that are exempt from Rule 49.1(a). Fed. R. Crim. P. 49.1(b)(9). As Defendant acknowledges, Def.'s Resp. at 2, Rule 49.1(a) does not cover the type of details he asks to be redacted from the Information. Further, Rule 49.1(b)(9) exempts charging documents from Rule 49.1(a). Thus, Rule 49.1(a) is not applicable in this case.

-9-

A well-settled common law right of access extends to the public a "general right to inspect and copy public records and documents, including judicial records and documents" in criminal and civil cases. United States v. Criden (Criden I), 648 F.2d 814, 819 (3d Cir. 1981). Under this common law right, a presumption of access attaches to any document deemed to be a "judicial record." Wecht, 484 F.3d at 208.

Applying these principals in criminal cases, the Third Circuit has found a right of public access to attach to a wide range of judicial records. See Criden I, 648 F.2d 814 (video and audio tapes admitted as evidence and played to the jury, for rebroadcast by the press); United States v. Martin, 746 F.2d 964 (3d Cir. 1984) (transcripts of tapes introduced into evidence, although the transcripts themselves were never introduced into evidence); United States v. Smith (Smith I), 776 F.2d 1104 (3d Cir. 1985) (bills of particulars); United States v. Smith, 787 F.2d 111 (3d Cir. 1986) (Smith II) (transcripts of sidebar and in-chambers conferences during which court made substantive rulings); United States v. Antar, 38 F.3d 1348 (3d Cir. 1994) (transcripts of voir dire proceedings conducted after press complied with court's request to leave the courtroom for space reasons); Wecht, 484 F.3d at 199 (materials potentially subject to discovery under Brady v. Maryland, 373 U.S. 83 (1963), and filed with sealed motion for in camera review).

In Smith I, the Third Circuit held that charging documents are subject to a strong presumption of public access. 776 F.2d at 1112 (regarding a bill of particulars as a supplement to the indictment because the two types of documents similarly "establish[ed] the general parameters of the government's case"). The Third Circuit identified a "historic tradition of public access to the charging document," grounded in the notion that the public's knowledge of the contents of a charge is essential to the public's ability to evaluate both the fairness of the

-10-

criminal process and the competency of counsel and the court. Smith I, 776 F.2d at 1112.
Relying on both the First Amendment and common law rights to access, Smith I concluded that
this strong presumption attached to all charging documents can only be outweighed by a
compelling interest "narrowly tailored to serve that interest." Id.; see also United States v.
Kushner, 349 F. Supp. 2d 892, 905 (D.N.J. 2005) (finding strong presumptions of access
associated with sentencing memoranda and letters explicitly relied upon by a district court in
imposing defendant's sentence, as documents related directly to "perhaps the most important of
judicial duties").

The Third Circuit affirmed the decision by Judge Muir in Smith I to seal portions of a bill
of particulars filed by the government. 776 F.2d at 1106. Among those listed in the bill were
public officials and employees that "could conceivably be considered as unindicted co-
conspirators," not simply those known to be co-conspirators. Id. The broad strokes of the bill
ensured it "virtually certain that serious injury [would] be inflicted upon innocent individuals."
Id. Thus, the court upheld Judge Muir's decision to withhold from the public the identity of the
unindicted co-conspirators due to the possibility of "career-ending" embarrassment resulting
from disclosure. Id. So doing, the Third Circuit held the privacy and reputational interests of the
third parties outweighed the strong presumption of access and the "extraordinary public interest"
in the information itself and sanctioned redaction of the charging document. Id.

Smith II, 787 F.2d at 116, arose out of the same indictment as Smith I. In Smith II, the
Third Circuit affirmed Judge Muir's decision to unseal transcripts of sidebar conversations
containing private information about a defense witness who was a high political party official.
While the Third Circuit had seen fit to protect the privacy of public officials in the prior appeal,

-11-

the privacy interests of the official in the subsequent appeal were "substantially diminished" because his testimony at trial had already made public his link to the sensitive subject at issue. Smith II, 787 F.2d at 116.

The most recent Third Circuit decision on the common law right of access dealt with the request by a media outlet for access to the personnel records of an investigating F.B.I. agent that had been sought by the defendant as potential Brady materials. Wecht, 484 F.3d at 207-11. The Third Circuit found the documents to be "clearly established" as judicial records because the government had filed them with the motion for in camera review. Id. at 209. The Third Circuit rejected the government's argument that, as discovery materials, the records should be exempt from the presumption of access. Id. at 210. The Wecht court distinguished between "traditional civil discovery" and the Brady materials sought in Wecht due to the need for public oversight of criminal justice matters. Id. at 210 (citing United States v. Criden (Criden II), 675 F.2d 550, 556 (3d Cir. 1982)). The highly public nature of the investigation and the fact that the records were subject to a judicial determination on their relevance to the proceedings also weighed in favor of public access. Id.

As the Second Circuit has described, the presumption of access is "based on the need for federal courts, although independent - indeed, particularly because they are independent - to have a measure of accountability[.]" Amadeo, 71 F.3d at 1048 (2d Cir. 1995). What constitutes a "'judicial record' hinges on 'whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" Kushner, 349 F. Supp. 2d at 898 (quoting In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001)).

-12-

The right is grounded, like its corollary under the First Amendment,[4] in "the need of the public to have confidence in the effective administration of justice, and the need for civic debate and behavior to be informed if it is to have value." United States v. Kemp, 365 F. Supp. 2d 618, 630 (E.D. Pa. 2005) (Baylson, J.) (citing Criden I, 648 F.2d at 820-21; Amodeo, 71 F.3d at 1048). In the civil context, the Third Circuit has also recognized the benefit of openness to "public health and safety by not allowing secrets hidden in court records to be shielded from public view." Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 664 (3d Cir. 1991) (upholding the unsealing by Judge Debevoise of materials filed in conjunction with summary judgment motion) (citing Lloyd Doggett & Michael Mucchetti, Public Access to Public Courts: Discouraging Secrecy in the Public Interest, 69 Tex. L. Rev. 643, 648 (1991)).

Although a document may be categorized as a "judicial record," it may not "necessarily be made available for public consumption." United States v. Kushner, 349 F. Supp.2d 892, 903 (D.N.J. 2005) (Linares, J.). The right of access, while "automatic," is not "absolute." Kemp, 365 F. Supp. 2d. at 630. In light of the court's "supervisory powers," Kushner, 349 F. Supp. 2d at

---

[4]While the principles of the common law right overlap with the First Amendment right to access, Defendant's case does not involve a third party challenge to the sealing of documents and no party has raised a constitutional question. Furthermore, the Court recognizes that a determination based on common law, rather than constitutional, grounds is preferable. See e.g. In re Cendant Corp., 260 F.3d 183, 198 (3d Cir. 2001) (declining to reach the First Amendment right of access after concluding the "District Court's confidentiality order did not satisfy the requirements for abridging even the common law right of access") (citing Hagans v. Lavine, 415 U.S. 528, 547 (1974) (noting "the ordinary rule that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available")). Thus, this Court limits its analysis to the common law right.

-13-

898, the court can exercise discretion to limit access to court documents "in light of the relevant facts and circumstances of the particular case." Kemp, 365 F. Supp. 2d at 630 (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978)). The party seeking to "overcome the presumption of access" bears the burden "to show that the interest in secrecy outweighs the presumption." Leap Systems, Inc. v. Moneytrax, Inc., et al., __ F.3d __, No. 10-2965 (3d Cir. March 15, 2011) (citing In re Cendant Corp., 260 F.3d at 190).

As the Information is a document "filed with the court," Kushner, 349 F. Supp. 2d at 898, Defendant has not disputed that the charging document is a judicial record subject to the public's right of access. In evaluating whether to exercise its discretion and order redaction, this Court must first determine the weight of the presumption of access that attaches to the Government's Information and, then, balance against the presumption any countervailing considerations, here Defendant's privacy and reputational interests. Amodeo, 71 F.3d at 1050.

### 1.     Presumption of Public Access

"[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Amodeo, 71 F.3d at 1051 (determining an investigative report prepared by a court officer pursuant to a court order to be "on the periphery of the adjudicative process"). The information contained within judicial records "will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. The strength of the presumption may also be informed by the public's "differing levels of exposure to the proceedings at issue" and the extent to which the judicial records "directly impacted and were crucial to the district

-14-

court's exercise of its Article III duties." Kushner, 349 F. Supp. 2d at 904.

In light of the Third Circuit's holding in Smith I regarding the presumption of access to
charging documents, this Court finds a strong presumption of access must attach to the
Information filed by the Government in this case. This decision is in keeping with the "historic
tradition" of promoting transparency and accountability through public scrutiny of charging
documents. which provides benefits to both the public and each individual defendant. See
United States v. Kott, 135 Fed. App'x 69, 70 (9th Cir. 2005) (finding a legitimate need to
disclose indictment and search warrant, subsequent to entry of plea, because the "public can
neither properly evaluate the fruits of the government's extensive investigation of [the defendant]
nor evaluate the plea agreement without access to the indictment"); In re Boston Herald, Inc., 321
F.3d 174, 201 (1st Cir. 2003) ("Public scrutiny of a criminal trial enhances the quality and
safeguards the integrity of the factfinding process, with benefits to both the defendant and to
society as a whole.").

## 2.    Public Interest in Disclosure

The Third Circuit has recognized particularly "vital interest" in access to judicial records
in criminal cases due to the need for public oversight of "the process by which the government
investigates and prosecutes its citizens." Wecht, 484 F.3d at 210 (quoting Criden II, 675 F.2d at
556). In tandem with this "intense need and . . . deserved right to know about the administration
of justice in general," the public also has an important interest in learning "about the prosecution
of local crimes in particular[,]" a consideration this Court finds to be distinctly relevant in this
case. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 604 (1980) (Blackmun, J.,
concurring). In addition, "[c]ircumstances weighing against confidentiality exist when

-15-

confidentiality is being sought over information important to public health and safety[.]" LEAP,
__ F.3d at __, No. 10-2965, at *12 (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777
(3d Cir. 1994)).[5]

Defendant is a pilot and a flying instructor. In violation of 18 U.S.C. § 1001 and over a
period of three years, Defendant withheld from the FAA information regarding his physical and
mental health, information which routinely factors into the agency's decision to recertify licensed
pilots. As the Government contends in its Response, Defendant's medical diagnoses go "directly
to his competence as a pilot" and his withholding of this information could have "created a
serious public safety issue" for the flying public and Defendant's own students. Id. at 10. This
Court finds that the public has an interest both in learning about Defendant's past actions, should
Defendant try to obtain a pilot license again in the future, and in knowing that the Government is
enforcing its safety rules and regulations. The Court finds that the subject matter of the charge
supports a determination that a strong presumption of access attaches to the Information filed by
the Government in this case.

### 3.     Countervailing Principles of Privacy and Reputation

Even a strong presumption of access "may be outweighed by conntervailing principles."

---

[5]In LEAP Systems, the Third Circuit affirmed a decision by Judge Wolfson to seal the
transcript of a proceeding recording the terms of a settlement agreement. No. 10-2965, at * 3.
The Third Circuit determined that Judge Wolfson had not erred in her conclusion that the
transcript was a "judicial record" and, thus, subject to a presumption of access. Id. at *10. Even
in the face of the presumption, the Third Circuit concluded that the decision to seal the document
was not an abuse of discretion. Judge Wolfson's assurances of confidentiality to the parties had
been instrumental in securing the settlement and were consistent with the parties' express intent
to maintain confidentiality. Id. at *12-13. Given "LEAP's strong privacy interest" and a
"minimal" public interest in disclosure, the Third Circuit held that Judge Wolfson appropriately
found LEAP to have rebutted the presumption of access.

-16-

Kemp, 365 F. Supp. 2d at 628 (citing In re Newark Morning Ledger, Co., 260 F.3d 217, 221 n.6 (3d Cir. 2001); see also Kushner, 349 F. Supp. 2d at 902-03. On at least on occasion, in Smith I, the Third Circuit concluded an "individual's privacy or reputational interests" were able to "rise to the level of a compelling governmental interest and defeat . . . the public's common law right of access to charging documents in a criminal proceeding." In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 94 (3d Cir. 1990) (remanding in order for district court to develop factual record on media's right to access records of conferences held during criminal trial concerning the involvement of a witness in a federal grand jury investigation unrelated to the matter about which witness testified) (citing Smith I, 776 F.2d at 1112-13.)); but see Kott, 135 Fed. App'x at 71 (noting that case law favors right of access over "reputational concerns").

The Second Circuit has described the concern for privacy as a "venerable common law exception to the presumption of access" and counseled that courts "consider the degree to which the subject matter is traditionally considered private rather than public." Amodeo, 71 F.3d at 1051. "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." Id. at 1050, 1052 (finding that any traditional expectation of privacy associated with the attorney-client relationship did not apply in Amodeo, particularly as the client was a labor union and "public scrutiny of the lawyer's role may thus be expected and even called for"); see also In re Boston Herald, Inc., 321 F.3d 174, 190 (1st Cir. 2003) (finding "[p]ersonal financial information . . . universally presumed to be private, not public[,]" and determining the privacy interests of a criminal defendant and his family in

-17-

documents submitted to show defendant's financial eligibility for Criminal Justice Act (CJA) funds to outweigh any presumption of access afforded CJA documents).

Defendant has argued that his medical diagnoses need remain private so as to protect him from the public stigma and humiliation associated with mental illness and substance abuse. Such information regarding a party's illness is "traditionally considered private rather than public." Amodeo, 71 F.3d at 1051.

However, as demonstrated by the differing results in Smith I and Smith II, the Third Circuit has been less inclined to protect a party's privacy when the information sought to be protected is already publicly available. See Smith I, 776 F.2d at 1105-18; Smith II, 787 F.2d at 114-16. Similarly, in United States v. Abdallah, No. H-07-155, 2009 WL 2246156 (S.D. Tex. July 24, 2009), Judge Rosenthal rejected the government's argument in a Medicare and Medicaid fraud case that trial exhibits must be sealed to prevent the disclosure of patients' medical history and medical records. Id. at *1-3. As the information "was offered by the patients themselves in open court and was a vital part of the government's case," their privacy interests could not outweigh the public's right of access. Id. at 6.

Defendant's diagnoses are already a matter of public record in three respects. First, on June 21, 2007, the Board of Nursing ordered Defendant to submit to the July 24, 2007 mental and physical examination that resulted in Defendant's diagnoses with opioid addition and bipolar disorder. Following the examination, Defendant and the Board entered into a Consent Agreement that details Defendant's diagnosis "with Opiod abuse in full, early remission and bipolar disorder II that is in full remission with treatment" and put Defendant's nursing license on probation. Consent Agreement at 2-3; Def.'s Ex. A. On or about October 27, 2008, the

-18-

Board issued a Preliminary Order terminating the probation period and actively suspending Defendant's nursing license for three years. Preliminary Order at 2; Def.'s Ex. B. The accompanying Petition for Appropriate Relief filed by the Commonwealth states that Defendant violated his probationary conditions, in part, by declining to disclose his suspension to his employer, practicing without a license and failing to abstain from alcohol. Petition for Appropriate Relief at 2; Ex. B. The Consent Agreement, which includes the original diagnoses, is attached to the Petition. See Ex. B. The Final Order entered by the Board of Nursing also contains findings of fact related to Defendant's medical diagnoses. Final Order at 3; Def.'s Ex. C. As the Government has aptly pointed out, each of these documents is date stamped and filed with the Department of State Prothonotary's Office. While the documents have not been widely disseminated, they are available to the public upon request.

Second, the Pennsylvania Department of State Bureau of Professional and Occupational Affairs website has posted a notice stating that Defendant "had his nursing license suspended for no less than three years, based on findings that he is unable to practice professional nursing with reasonable skill and safety to patients by reason of mental illness and dependence on alcohol." Disciplinary Actions, May 2009 at 16; Ex. D. This notice does not specify the nature of Defendant's mental illness and makes reference only to alcohol abuse. The notice of suspension does, however, support a finding by this Court that Defendant's own conduct in violating his probationary conditions has made his diagnoses a matter of public record, thereby diminishing his expectation of privacy.

Third, Defendant's plea hearing was conducted in open court. The details of his medical history that Defendant now wishes to protect were discussed during this proceeding. The audio

-19-

of the hearing is now available on the docket as ECF No. 14. Defendant has made no effort to seal the plea hearing or the audio file.

This Court finds inapposite the civil cases cited by Defendant in his Motion to support his assertion that this Court should protect him from stigmatization as a result of disclosure of his mental illness. See Doe v. United Behavioral Health, No. 10-5192, 2010 WL 5173206, at *2 (E.D. Pa. Dec. 10. 2010) (Padova, J.); Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467-68 (E.D. Pa. 1997) (Newcomer, J.). In both cases, the court found a "substantial public interest" in "preventing the stigmatization of litigants with mental illnesses" to weigh in favor of allowing a civil litigant to proceed pseudonymously and against the public's right of access. United Behavioral Health, 2010 WL 5173206, at *2; Provident Life, 176 F.R.D. at 467-68. The efforts in these two civil cases to protect the identities of plaintiffs with mental illness did not arise abstractly, but out of concern that requiring disclosure would deter civil litigants with mental illness from "ever reaching the courthouse steps [to vindicate their rights] for fear of repercussions that would ensue if their condition was made public." United Behavioral Health, 2010 WL 5173206, at *3 (quoting Doe v. Hartford Life & Accident Ins. Co., 237 F.R.D. 545, 550 (D.N.J. 2006)); see also Provident Life, 176 F.R.D. at 468. As well, significant consideration was given in both cases to the "extent to which the identity of the litigant [had] been kept confidential." Provident Life, 176 F.R.D. at 468; see also United Behavioral Health, 2010 WL 5173206, at *2 (finding persuasive the fact that Plaintiffs had "kept Jane Doe's history of mental illness confidential from all but her closest friends, family and treating physicians," despite an inadvertent disclosure).

Having been criminally prosecuted for and pleaded guilty to a violation of 18 U.S.C. §

1001, Defendant cannot rely on the notion that disclosure has prevented or will prevent him from vindicating his rights. Nor, as discussed above, can Defendant claim that he has preserved the confidentiality of his diagnoses.

Defendant's request is further defeated by that fact that he seeks only to protect his own interests. Unlike the cases cited above, this case does not jeopardize the privacy of third parties who "would have no meaningful opportunity to respond" to any allegations because they were not part of the case. Smith I, 776 F.2d at 1107; see also Amodeo, 71 F.3d at 1050 (noting that greater weight is given to privacy interests of "innocent third parties"); In re Boston Herald, Inc., 321 F.3d at 191 ("[T]he invasiveness of the disclosure [of financial documents] sought here is further intensified because the information pertains not only to [the defendant], but also to his wife and children.") (citing Amodeo, 71 F.3d at 1050). The information Defendant seeks to protect does not implicate innocent third parties without recourse to respond. Defendant has been given every chance to face the allegations against him and has chosen to enter his guilty plea, an act which clearly diminishes his expectation in privacy. See Application of Newsday, Inc., 895 F.2d 74, 75 (2nd Cir. 1990).

Finally, Defendant argues that the possibility that disclosure of an unspecified "opioid addition" could mislead the public into thinking that Defendant is a heroin addict, which he has stated he is not. Def.'s Mot. at 1 n.1, 2. In Amodeo, the Second Circuit found the hearsay nature of unsworn accusations to "militate against unsealing" given their potential to mislead due to "misinformation" and "doubtful veracity, possibly stemming from apparent personality conflicts." 71 F.3d at 1052. This case does not present an analogous scenario. Defendant pleaded guilty to the charge against him and has not nor cannot now argue that the allegations are

-21-

of "doubtful veracity" or the result of improper motives. It is not the Government's responsibility to mitigate any potential for misinterpretation of the details contained within its charging documents, nor can a potential for misinterpretation of allegations outweigh the demonstrated public interest in preserving access to these documents.

## IV.   **Conclusion**

"As a matter of public policy, the Court refrains from entering a veil of secrecy on material that is of great public interest where there is no clear legal mandate to do so." United States v. White, No. CRIM. A. 04-370, 2004 WL 2399731, at *6 (E.D. Pa. 2004) (Baylson, J.). Here, Defendant has not met his burden to establish that his privacy interests must overcome the strong presumption of public access to judicial records and significant public interest in the information related to Defendant's criminal charge. The Court concludes, in the absence of any precedent supporting Defendant's position, that the Government's Motion should be granted for the reasons stated above.

An appropriate Order follows.

O:\Criminal Cases\11-15 U.S. v. Konrad\U.S. v. Konrad 11-15 Motion for Reconsid on Motion to Redact Memorandum.wpd